1
2
3
4
5
6
7
8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    VENETTE MARRINER,                        CASE NO. CV-F-00-5176 AWI LJO

12                    Plaintiff,              **ORDER ON DEFENDANT'S MOTIONS TO**
                                              **DISMISS AND IN LIMINE**
13          vs.                                (Doc. 67.)

14
      CALIFORNIA ARMY NATIONAL
15    GUARD, et al.,
                        Defendants.
16    _____/

17                               **INTRODUCTION**

18          Defendant Louis Caldera, Secretary of the U.S. Army,[1] seeks to dismiss and exclude evidence

19    of plaintiff Vennette Marriner's ("Ms. Marriner's") employment discrimination claims which the Army

20    characterizes as administratively unexhausted.  This Court considered the Army's motion to dismiss and

21    alternative in limine motion on the record and without oral argument or the August 25, 2006 hearing,

22    pursuant to this Court's Local Rule 78-230(h).  For the reasons discussed below, this Court DENIES the

23    Army's motion to dismiss and alternative motion in limine.

24                               **BACKGROUND**

25    **Ms. Marriner's San Luis Obispo Employment And Discrimination Claims**

26          During 1990-1995, Ms. Marriner worked as a civilian GS-4 supply clerk and was an equal

27    _____

28          [1]        For convenience, the named defendants collectively will be referred to as the "Army."

                                           1

employment opportunity ("EEO") counselor at a San Luis Obispo Army facility.  In connection with her

San Luis Obispo employment, Ms. Marriner pursued against the Army administrative claims that:

1.   Her supervisor had made an unsubstantiated negative comment about her performance;

2.   She was denied a supply clerk promotion;

3.   She was removed as an EEO counselor on a case on which she worked; and

4.   Management had placed unsubstantiated derogatory letters in her personnel file without giving her proper notice or opportunity to respond.

Ms. Marriner claims that she was constructively discharged on May 2, 1995 because "I could no longer tolerate working in a hostile environment."  As of December 20, 1995, the Army issued a final decision on Ms. Marriner's claims to find no discrimination.  Ms. Marriner appealed the Army's decision to the Office of Federal Operations ("OFO") of the U.S. Equal Employment Opportunity Commission ("EEOC").

OFO issued a January 5, 1999 decision to reverse the Army's decision regarding denial of a supply clerk promotion and to find that Ms. Marriner had failed to establish "a continuing violation of reprisal discrimination" as to her other claims.  OFO ordered the Army to award Ms. Marriner backpay, reinstatement and compensatory damages regarding a supply clerk promotion.

The Army paid the backpay and reinstated Ms. Marriner in March 1999 to a GS-5 civilian secretarial position at a Stockton Army vehicle maintenance facility.  On February 2, 2000, Ms. Marriner filed her original complaint in this action to address the unresolved issue of compensatory (emotional distress) damages.

**Ms. Marriner's Stockton Employment And Alleged Discrimination And Retaliation**

Ms. Marriner notes that for the first 18 months of her reinstatement, she was assigned to the production control section at the Stockton Army facility.  According to Ms. Marriner, when she started her reinstatement, 60-70 federal technicians worked at the Stockton facility and all but one were uniformed National Guard members.  Ms. Marriner notes that the uniformed employees were assigned to "excepted" technician positions to require National Guard affiliation as an employment condition.  Ms. Marriner claims that she performed a GS-6 excepted position but was not paid GS-6 wages although she received a good evaluation.  Ms. Marriner further claims that she was denied the opportunity to apply

1   and compete for a GS-6 production control position which was awarded to another woman.

2        In September 2000, Ms. Marriner was reassigned to the supply department at the Stockton

3   facility. Ms. Marriner claims that all supply section positions were designated as "excepted" technicians

4   for uniformed personnel only. Ms. Marriner further claims that in the supply department, she received

5   no work, including secretarial. Ms. Marriner perceived the reassignment as punishment and ostracism

6   and notes that she "did nothing, all day, for two more years."

7        In October 2000, Ms. Marriner requested GS-6 pay for her production control work given that

8   the Army failed to promote her to the GS-6 production control position. The Army denied her request.

9        In October 2000, Ms. Marriner also inquired into receiving training on EEO dispute

10  resolution/mediation. The Army's California EEO manager criticized Ms. Marriner for doing so. On

11  October 18, 2000, Ms. Marriner contacted EEO counselor Staff Sergeant John Demery ("Sgt. Demery")

12  to initiate counseling regarding the denial of her request for the training. Ms. Marriner attributes Sgt.

13  Demery to indicate that his supervisors had been told him not to talk to Ms. Marriner and that her

14  complaint "was already being handled."

15       Ms. Marriner further notes that during the October 2000 time frame, she started to see a therapist

16  for anxiety and depression resulting from her work and a submitted a plan for secretarial work. Ms.

17  Marriner claims that "the Army ignored her request and left her with nothing to do." Ms. Marriner

18  claims that her depression/anxiety medication caused drowsiness at work. According to Ms. Marriner,

19  the Army denied her request to work from home and her physician excused her from work until mid-

20  November 2000.

21       In late March 2001, the Army denied Ms. Marriner's request for assignment to a tools and parts

22  attendant position at the Stockton facility. Ms. Marriner claims that in July 2001, she attempted to

23  initiate EEO counseling with Sgt. Demery who told her that his managers advised him not to speak with

24  her because of her existing complaint.

25       William J. Smith ("Mr. Smith"), Ms. Marriner's attorney, sent the Army a July 30, 2001 letter

26  to "serve as a formal complaint" for Ms. Marriner "for ongoing retaliation related to her complaint and

27  claim of sex discrimination and retaliation. Ms. Marriner continues to experience retaliation in the

28  workplace, such that it is causing her severe emotional distress." Mr. Smith sent another July 30, 2001

letter to notify Assistant U.S. Attorney Robert Wright ("Mr. Wright") that Mr. Smith was preparing "a retaliation charge" in that Ms. Marriner "is being retaliated against because of her complaints of discrimination, and her opposition to unlawful practices in the workplace." According to Ms. Marriner, the Army on August 21, 2001 denied the claim because Ms. Marriner did not complete EEO counseling and the claim "was allegedly a new complaint."

With his September 20, 2001 letter, Mr. Smith responded to the Army that "we will require a determination from you as to whether or not this matter is part of a new or ongoing issue. It clearly arises out of our client's previous claims and litigation regarding civil rights. We contend it is in retaliation for same." Mr. Smith's October 12, 2001 letter informed Mr. Wright "that Ms. Marriner['s] complaints of retaliation are new, but stem from the original complaint." With his December 27, 2001 letter, Colonel William F. Weir ("Col. Weir"), an Army Staff Judge Advocate, advised Mr. Smith that "we do not consider what you contend is a complaint to be such until you comply with the appropriate procedural requirements" and directed Mr. Smith to communicate with Mr. Wright. Ms. Marriner notes that Mr. Wright did not address the matter "over the next year because the parties postponed the civil trial and tried to settle the whole case."

In September 2001, Ms. Marriner requested a retroactive GS-6 promotion based on her claim that during March 1999 to September 2000, she performed GS-6 duties but was paid GS-5 wages. After the Army acknowledged that Ms. Marriner's production controller tasks exceeded the scope of her original secretarial assignment, Ms. Marriner accepted the Army's $2,800 performance award and retroactive bonus for her prior production control work. Ms. Marriner signed an April 16, 2002 memorandum to acknowledge "resolution of your complaint and no further action may be taken on your part."

In fall 2001, Ms. Marriner requested to telecommute from home based on medication causing drowsiness and falling and hurting herself on the job. The Army denied the telecommute request.

Ms. Marriner claims that she appeared for a January 23, 2002 meeting with Army managers to address her stress and lack of work assignments but that the meeting was continued and the Army neither revisited the issue nor gave Ms. Marriner work.

In March 2002, Ms. Marriner requested disability retirement benefits, and the request was denied in June 2002.

In her declaration, Ms. Marriner states that in April 2002, she "filed a formal complaint with the Army" to which there was no response. Ms. Marriner declares that she "filed the same complaint" again on May 29, 2003 and served it again by certified mail on March 23, 2004 but received no Army response.

In November 2002, Ms. Marriner again requested to telecommute. In December 2002, the Army denied the telecommute request and requested "statements from a physician or other competent professional attesting to the need to allow you to telecommute."

In March 2003, Ms. Marriner requested leave without pay because, as she declares, "I was stressed out from work due to discrimination and retaliation, and I had no more paid leave to utilize." Ms. Marriner submitted an April 28, 2003 letter to resign "because of the retaliation I experienced by the Army after my reinstatement."

### Ms. Marriner's May 2003 Administrative Complaint

Ms. Marriner filed with the Army her May 28, 2003 administrative complaint ("May 2003 complaint") to claim:

> I have suffered continuous retaliation since I filed an EEOC charge of discrimination and prevailed in same. (The past several years). The retaliation has taken the form of severe and pervasive harassment. It finally became so intolerable that I was forced to resign on April 28, 2003.

Ms. Marriner pointed to specific discriminatory acts:

1. Criticism for her inquiring into EEO training in October 2000;

2. Denial in September 2001 of a retroactive GS-6 promotion;

3. Denial of her October 2001 telecommute request; and

4. Denial of her March 2002 disability retirement benefits request.

In her May 2003 complaint, Ms. Marriner concluded that the Army "created a hostile work environment . . . to retaliate against me for filing EEO complaints in the past."

Ms. Marriner points out that with his July 24, 2003 letter, Assistant U.S. Attorney Kirk Sherriff advised Col. Weir that Ms. Marriner's May 2003 complaint "should be reviewed and processed by the agency pursuant to the agency's normal procedures for handling EEO complaints."

With his December 8, 2003 letter, Mr. Smith requested Assistant U.S. Attorney Kristi Kapetan

5

("Ms. Kapetan") to stipulate to an amended complaint in this action to add a constructive discharge cause of action. Ms. Kapetan responded with her December 16, 2003 letter that the May 2003 complaint "is still in the administrative process" and that until completion of the process, Ms. Marriner "has not exhausted her administrative remedies and an amendment is therefore premature." Ms. Kapetan noted in her December 31, 2003 letter to Mr. Smith that "I am not adverse to including all claims in one lawsuit."

Col. Weir's February 19, 2004 letter informed Mr. Smith that the Army had employed an EEO counselor "to counsel Ms. Marriner regarding the [May 2003] complaint." The EEO counselor's March 10, 2004 report notes that Ms. Marriner contacted him on March 9, 2004 but that the EEO counselor could not interview Ms. Marriner without Mr. Smith's consent.

**Ms. Marriner's March 2004 Administrative Complaint**

After receiving the EEO counselor's March 17, 2004 notice of final interview (notice of right to file complaint), Ms. Marriner served the Army a March 21, 2004 administrative complaint ("March 2004 complaint"). With the March 2004 complaint, Ms. Marriner requests:

> 1.    "[M]y EEO complaint investigated in a timely and correct manner";
>
> 2.    "[A] letter of reprimand given to Dorothy Love for her hostile treatment directed at me, her misconstrued statements made to MAJ Bernier and her unprofessional and inappropriate question to me directly about 'the status of my EEO complaint' when she was aware I was represented by an Attorney and this was against regulations"; and
>
> 3.    "[A] letter of apology from MAJ Bernier for not acting in a professional manner, hearing both sides of the 'story.'"

Ms. Marriner claims that her March 2004 complaint includes her May 2003 complaint's allegations and that the Army's version of her March 2004 complaint is incomplete. Ms. Marriner declares:

> In April 2002, I filed a formal complaint with the Army at the California National Guard State Equal Employment Office. There was no response from the Army regarding the April 2002 complaint. I again filed the same complaint that I sent in April 2002, as another formal EEO complaint on May 28, 2003. I served it again by certified mail on March 23, 2004, and it was received on March 24, 2004 at the California National Guard State Equal Employment Office. Again, there was no response from the Army regarding my complaint. Exhibit F to Mr. Enos' Declaration does not include that pages that I attached to the complaints made in April 2002, May 2003 and March 2004.

6

1    Ms. Marriner appears to claim that her April 2002, May 2003 and March 2004 complaints included the

2    same claims with the March 2004 complaint adding claims.

3    _____On March 30, 2004, Ms. Marriner applied for disability retirement benefits based on stress.  Ms.

4    Marriner asserts the Army thwarted her application and claimed that "she did not need any

5    accommodation and that her performance was just fine."  With its July 14, 2005 decision, the U.S. Merit

6    Systems Protection Board ("MSPB") reversed the Office of Personnel Management's ("OPM's") denial

7    of disability retirement benefits for Ms. Marriner and awarded Ms. Marriner disability retirement

8    benefits.

9    With his June 10, 2004 letter, Mr. Smith informed the Army that he had received no response

10   to the March 2004 complaint.  Col. Weir responded in his July 14, 2004 letter that the March 2004

11   complaint "has been dismissed for lack of cooperation" in that neither Ms. Marriner nor Mr. Smith

12   provided "factual details to support her allegations."  Ms. Marriner notes that with its November 9, 2004

13   letter, the Army for the first time acknowledged official receipt of the March 2004 complaint to assign

14   it a case number.

15   Ms. Marriner points out that the Army's November 18, 2004 memorandum dismissed Ms.

16   Marriner's May 2003 complaint on grounds that Ms. Marriner failed to file a formal complaint within

17   15 calendar days of the EEO counselor's March 17, 2004 notice of final interview.  On December 16,

18   2004, Ms. Marriner filed an appeal with the EEOC, which with its July 12, 2006 decision found that the

19   March 2004 complaint was timely filed and improperly dismissed.  The EEOC noted that the May 2003

20   complaint "is not at issue in this decision."  The EEOC decision informed Ms. Marriner of her right to

21   pursue a civil action:

22          This is a decision requiring the agency to continue its administrative processing of your
             complaint.  However, if you wish to file a civil action, you have the right to file such
23          action in an appropriate United States District Court **within ninety (90) calendar days**
             from the date that you receive this decision.  In the alternative, you may file a civil action
24          after **one hundred and eighty (180) calendar days** of the date you filed your complaint
             with the agency, or filed your appeal with the Commission. . . . **Filing a civil action will**
25          **terminate the administrative processing of your complaint.**  (Bold in original.)

26   The Army claims that based on the EEOC decision, it "is investigating plaintiff's March 21, 2004 claim

27   and is in the process of developing an investigative file regarding the same."

28   / / /

1       **Ms. Marriner's Pending Claims And The Army's Motions To Dismiss**

2       **And To Exclude Evidence**

3       On July 14, 2005 and based on stipulation with the U.S. Attorney's Office, Ms. Marriner filed

4 in this action her operative first amended complaint to allege that at the Stockton Army facility, she "was

5 again subjected to continuing discrimination for her previous EEO complaints and was retaliated against

6 by Defendants which created adverse working conditions for Plaintiff" to culminate in Ms. Marriner's

7 forced resignation. The first amended complaint further alleges that the Army's policies and practices

8 "constituted unlawful discrimination and unlawful retaliation for the exercise of rights guaranteed under

9 Title VII of the Civil Rights Act", 42 U.S.C. § 2000(e), et seq. ("Title VII"). Ms. Marriner's first

10 amended complaint references her May 2003 complaint and its four specific claims regarding criticism

11 for her inquiring into EEO training in October 2000 and denials of her requests for a GS-6 promotion,

12 to telecommute, and for disability retirement benefits.

13       On August 23, 2005, the Army filed its answer to the first amended complaint and alleged as an

14 affirmative defense that Ms. Marriner failed to administratively exhaust claims. On June 20, 2006, the

15 Army filed its alternative motions to dismiss and to exclude evidence of Ms. Marriner's "claims relating

16 to her Stockton-based employment that were not specifically identified in her May 28, 2003

17 administrative claim" on grounds "the Court has no jurisdiction over the recently surfaced claims"

18 regarding Ms. Marriner's Stockton employment to render such claims irrelevant and subject to exclusion

19 under F.R.Evid. 403 (unfair prejudice, confusion of issues, misleading jury, undue delay and waste of

20 time). The Army contends that Ms. Marriner's claims regarding the GS-6 promotion and disability

21 retirement benefits have been resolved. The Army concludes that as to Ms. Marriner's Stockton

22 employment, her discrimination claims are limited to criticism of her inquiring into EEO training and

23 denial to telecommute. According to the Army, Ms. Marriner "has spent significant efforts raising issues

24 regarding her Stockton employment that [are] unrelated to any administrative claim filed." The Army

25 points to comments of April Roman-Lomelli ("Ms. Roman-Lomelli"), Ms. Marriner's coworker, that

26 Ms. Marriner "was not given any regular scheduled duties" to result in "stress so phenomenal it started

27 to affect her mentally and physically."

28       On June 26, 2006, Ms. Marriner filed papers to strike the Army's alternative motions to dismiss

1   and in limine on grounds that the Army filed the motions after the March 31, 2006 motion filing

2   deadline and that ensuing press of business prevented Ms. Marriner's counsel to adequately oppose the

3   Army's motions set for a July 21, 2006 hearing.  After a June 27, 2006 telephone conference with the

4   parties' counsel, this Court issued its June 27, 2006 order to reset the hearing date to August 1, 2006.

5   The now vacated hearing was moved to August 25, 2006 based on the parties' stipulation.

6                                   **DISCUSSION**

7                           **The Army's Motion To Dismiss**

8   _____*Administrative Exhaustion*

9        The Army seeks to dismiss for lack of subject matter jurisdiction "those claims plaintiff failed

10  to administratively *present* (namely those relating to plaintiff's work in the supply department in the

11  Stockton Combined Support Machine Shop."    In effect, the Army appears to seek to limit Ms.

12  Marriner's claims to criticism for inquiry into EEO training and denial to telecommute.  The Army seeks

13  to dismiss administratively unexhausted claims under F.R.Civ.P. 12(b)(1) which allows a motion to

14  dismiss for lack of subject matter jurisdiction.

15       Fundamentally, federal courts are of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co.*,

16  511 U.S. 375, 377, 114 S.Ct. 341 (1994).  "A federal court is presumed to lack jurisdiction in a particular

17  case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated Tribes*, 873 F. 2d 1221,

18  1225 (9th Cir. 1989).  Limits on federal jurisdiction must neither be disregarded nor evaded.  *Owen*

19  *Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978).  A plaintiff bears the

20  burden to establish that subject matter jurisdiction is proper.  *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396.

21  Subject matter jurisdiction is fundamental; "[t]he defense of lack of subject matter jurisdiction cannot

22  be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the

23  court lacks jurisdiction." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir.1983).

24       To pursue a Title VII claim in federal court, a plaintiff must first exhaust administrative

25  remedies.  42 U.S.C. § 2000e-16(c); *Brown v. General Services Admin.*, 425 U.S. 820, 832, 96 S.Ct.

26  1961, 1967 (1976.); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001).  Under the Title VII

27  statutory and regulatory scheme, a federal employee must notify an EEO counselor of discriminatory

28  conduct within 45 days of the alleged conduct, and if the matter is unresolved, the employee may submit

a formal administrative complaint with the agency which allegedly discriminated. *Sommatino*, 255 F.3d at 708 (citing 29 C.F.R. § 1614.105 (pre-complaint process); 29 C.F.R. § 1614.106 (individual complaints)). Such complaint "must contain a signed statement from the person claiming to be aggrieved or that person's attorney. This statement must be sufficiently precise to identify the aggrieved individual and the agency and to **describe generally the action(s) or practice(s)** that form the basis of the complaint." (Bold added.)

29 C.F.R. § 1614.106(d) addresses amendment of administrative complaints:

> A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint. After requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint.

"[S]ubstantial compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite." *Sommantino*, 255 F.3d at 708 (italics in original). "[T]he jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation." *Paige v. State of California*, 102 F.3d 1035, 1041 (9th Cir. 1996). "The district court has jurisdiction over any charges of discrimination that are 'like or reasonably related' to the allegations in the EEOC charge, or that fall within the 'EEOC investigation which can reasonably be expected to grow out the charge of discrimination.'" *Sommatino*, 255 F.3d at 708 (quoting *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000) and *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994)). When an employee seeks judicial relief for incidents not listed in his original charge to the administrative agency, the judicial complaint my encompass discrimination "like or reasonably related to the allegations" of the agency charge, including "new acts" occurring during the pendency of the charge before the administrative agency. *Greenlaw v. Garrett*, 59 F.3d 994, 1000 (9th Cir. 1995), *cert. denied*, 519 U.S. 836, 117 S.Ct. 110 (1996).

According to the Army, Ms. Marriner never presented an administrative claim to address matters arising after her transfer to the supply department at the Stockton Army facility and which Ms. Marriner and Ms. Roman-Lomelli discussed in their depositions. The Army argues that Ms. Marriner is unable to "cloak her prior administrative complaints (whether based in San Luis Obispo or Stockton) around completely unrelated issues that were never raised administratively." The Army characterizes Ms.

Marriner's Stockton supply work as "unrelated to her prior employment in San Luis Obispo." The Army points to *AMTRAK v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 2073 (2002), where the U.S. Supreme Court noted that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice.'" Temporal proximity "between an employer's knowledge of protected activity and an adverse employment action" to establish causation "must be 'very close.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511 (2001). The Ninth Circuit Court of Appeals has explained:

> We have recognized previously that, in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity. . . . But timing alone will not show causation in all cases; rather, "in order to support an inference of retaliatory motive, the termination must have occurred 'fairly soon after the employee's protected expression.'" . . . A nearly 18-month lapse between protected activity and an adverse employment action is simply too long, by itself, to give rise to an inference of causation.

*Valliarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2003) (citations omitted).

Ms. Marriner responds that "pre-complaint counseling is not required for any new claim that is like or related to an existing claim." Ms. Marriner argues that she may amend her administrative complaints to include like or related wrongful acts.

Unfortunately, the parties are unclear as to which claims or alleged wrongs are at issue. The Army focuses its unexhausted claims arguments on matters arising after Ms. Marriner's September 2000 assignment to the Stockton supply department. The Army notes that Ms. Marriner's May 2003 complaint addresses criticism for her inquiring into EEO training in October 2000 and denial of her requests for a GS-6 promotion in September 2001, to telecommute in October 2001 and for disability retirement benefits in March 2002. The Army argues that the GS-6 promotion and disability retirement benefits claims have been resolved to leave only her claims for criticism for inquiry into EEO training and denial to telecommute. The Army references other issues regarding Ms. Marriner's Stockton supply department employment but fails to identify them other than to note Ms. Marriner and Ms. Roman-Lomeli's claims that Ms. Marriner was not given regular scheduled duties and suffered stress.

Ms. Marriner discusses a series of issues arising after the September 2000 transfer to the Stockton supply department and including:

11

1.   Construing the transfer to the supply department as a punishment and ostracism;

2.   Receiving no work to perform;

3.   October 2000 criticism for her inquiry into training on EEO dispute resolution/mediation;

4.   March 2001 denial of her request to a tools and parts attendant position in the Stockton facility and inability to initiate EEO counseling thereafter;

5.   Denial of her September 2001 request for a retroactive GS-6 promotion based on her claim that during March 1999 to September 2000, she performed GS-6 duties but was paid GS-5 wages;

6.   Denial of her fall 2001 request to telecommute;

7.   June 2002 denial of disability retirement benefits;

8.   December 2002 denial of her repeated request to telecommute;

9.   Her March 2003 request for leave without pay;

10.  Failure to engage in meaningful EEO counseling to address her May 2003 complaint; and

11.  Denial of her March 30, 2004 application for disability retirement benefits.

The March 2004 complaint notes hostile treatment and unprofessional conduct of Dorothy Love and "MAJ Bernier." Ms. Marriner appears to argue that the above matters evidence an ongoing retaliation and hostile environment subject to no less than her May 2003 complaint. The Army argues that the "entirety of plaintiff's Stockton-based administrative complaints are memorialized within her May 2003 and March 2004 formal complaints."

The Ninth Circuit has explained scope of federal jurisdiction arising from a Title VII administrative complaint:

> The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC charge and the EEOC investigation. . . . We therefore must examine proceedings before the EEOC to determine the scope of federal court jurisdiction in [plaintiff's] case. In analyzing [a plaintiff's] EEOC charge, we must construe the charge liberally. . . . Further, we must inquire "whether the original EEOC investigation would have encompassed the additional charges" made in the court complaint but not included in the EEOC charge itself. . . . In short, the jurisdiction for [plaintiff's] court action is not limited to the actual EEOC investigation, but can include the scope of an "'EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination.'" . . . We conduct this inquiry into allegations occurring not only before, but also after the filing of [a plaintiff's] EEOC charge." . . . Even where . . .claimants have failed to allege a continuing violation theory specifically in their EEOC charge, we have permitted suit on a continuing violation theory.

12

1   *Sosa v. Hiraoka*, 920 F.2d 1451, 1456-1457 (9th Cir. 1990) (Italics in original; citations omitted).

2   The gist of Ms. Marriner's claims arising after her supply department transfer is retaliation for

3   pursuing civil rights claims and hostile work environment.  Ms. Marriner's May 2003 complaint, which

4   is to be construed liberally, identifies "continuous retaliation since I filed an EEOC charge" in the form

5   of "severe and pervasive harassment" to culminate in her April 28, 2003 resignation.  Ms. Marriner's

6   May 2003 complaint generally described complained of actions and practices in accordance with 29

7   C.F.R. § 1614.106(c).  Ms. Marriner is entitled to amend her administrative complaint under 29 C.F.R.

8   § 1614.106(d).  The specific incidents raised by Ms. Marriner are like or reasonably related to retaliation

9   and harassment.  The matters as a whole of which Ms. Marriner complains are not neat discrete acts to

10  easily plug into an administrative complaint.  The matters have arisen since October 2000 and continued

11  into March 2004 to culminate in Ms. Marriner's April 28, 2003 resignation.  The Army's focus is too

12  narrow given the May 2003 complaint's claim of "continuous retaliation."

13  Moreover, Ms. Marriner raises a valid point that an EEOC or related Army investigation would

14  have encompassed matters which the Army seeks to avoid here.  An investigation into matters raised

15  by Ms. Marriner reasonably can have been expected to grow from her May 2003 and March 2004

16  complaints.  Ms. Marriner clearly pointed to continuous retaliation to address matters arising after her

17  supply department transfer.  The Army has failed to substantiate an absence of Ms. Marriner's

18  substantial compliance for the broad dismissal it seeks.

19  ***Disputed Factual Issues***

20  Ms. Marriner argues that disputed factual issues must be resolved in her favor to decide whether

21  she pursues unexhausted claims.  Ms. Marriner points out that a "court may not resolve genuinely

22  disputed facts where 'the question of jurisdiction is dependent upon the resolution of factual issues going

23  to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (addressing a habeas corpus

24  petition; quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).  Ms. Marriner

25  contends that the Army thwarted attempts to meet with an EEO counselor and ignored her written

26  complaints to intertwine with and support her hostile environment and constructive discharge claims.

27  Ms. Marriner argues the existence of disputed facts whether the Army denied her pre-complaint

28  counseling and whether equitable tolling extends the deadline to file an administrative complaint.

1    The Army responds that "Title VII administrative claim presentation challenges are for *courts*

2    to determine with respect to the extent they reveal a lack of jurisdiction over the subject matter of the

3    intended claim."  The Army concludes that this Court "may analyze the evidence presented to it, without

4    presuming the truthfulness of plaintiff's allegations, in evaluating the merits of the Army's jurisdictional

5    claims."

6    29 C.F.R. § 1614.105(a) requires a discrimination claimant to "consult with a Counselor prior

7    to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(d) requires

8    a counselor to "conduct the final interview" with the discrimination complainant within 30 days of when

9    the discrimination complainant contacted the agency's EEO office for counseling. The section continues

10   that if the matter is not resolved, the counselor must inform the discrimination claimant in writing no

11   later than 30 days after contacting the counselor of the right to file a discrimination complaint. 29 C.F.R.

12   § 1614.106(g) prohibits a counselor to "attempt in any way to restrain" a discrimination claimant to file

13   a complaint.  A discrimination complainant may file a federal civil action if the agency fails to act on

14   his/her administrative complaint within 180 days. *See* 42 U.S.C. § 2000e-16(c). "[F]ailure to file a

15   timely EEOC administrative complaint is not a jurisdictional prerequisite to a Title VII claim, but is

16   merely a statutory requirement subject to waiver, estoppel and equitable tolling." *Sommatino*, 255 F.3d

17   at 708 (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127 (1982)).

18   Ms. Marriner alleges that the Army created a hostile environment during her last two years of

19   employment and retaliated against her by withholding work from her.  Ms. Marriner points to her

20   January 23, 2002 meeting with managers to address her lack of work and continuance of the meeting

21   without revisiting the issue.  The United States Supreme Court has explained the peculiarity of hostile

22   environment claims:

23        Hostile environment claims are different from discrete acts.  Their very nature
          involves repeated conduct. . . . The "unlawful employment practice" therefore cannot be
24        said to occur on any particular day.  It occurs over a series of days or perhaps years and,
          in direct contrast to discrete acts, a single act of harassment may not be actionable on its
25        own. . . . Such claims are based on the cumulative effect of individual acts. . . .

26        . . . A hostile work environment claim is composed of a series of separate acts
          that collectively constitute one "unlawful employment practice."

27

28   *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115-116, 117, 122 S.Ct. 2061, 2073, 2074

(2002).

Ms. Marriner points out that in July 2001, she attempted to initiate EEO counseling with Sgt. Demery who told her that his managers prevented him to speak with her.  Mr. Smith sent the Army his July 30, 2001 letter to "serve as a formal complaint" for Ms. Marriner "for ongoing retaliation related to her complaint and claim of sex discrimination and retaliation."  Mr. Smith sent another July 30, 2001 letter to Mr. Wright that Mr. Smith was preparing "a retaliation charge" in that Ms. Marriner "is being retaliated against because of her complaints of discrimination, and her opposition to unlawful practices in the workplace."  According to Ms. Marriner, the Army on August 21, 2001 denied the claim because Ms. Marriner did not complete EEO counseling and the claim "was allegedly a new complaint."

With his September 20, 2001 letter, Mr. Smith responded to the Army that "we will require a determination from you as to whether or not this matter is part of a new or ongoing issue.  It clearly arises out of our client's previous claims and litigation regarding civil rights.  We contend it is in retaliation for same."  Mr. Smith's October 12, 2001 letter informed Mr. Wright "that Ms. Marriner['s] complaints of retaliation are new, but stem from the original complaint."  With his December 27, 2001 letter, Col. Weir advised Mr. Smith that "we do not consider what you contend is a complaint to be such until you comply with the appropriate procedural requirements" and directed Mr. Smith to communicate with Mr. Wright.  Ms. Marriner notes that Mr. Wright did not address the matter "over the next year because the parties postponed the civil trial and tried to settle the whole case."

Ms. Marriner declares that the Army failed to respond to her April 2002 administrative complaint and in turn, to initiate EEO counseling.

With his December 8, 2003 letter, Mr. Smith requested Ms. Kapetan to stipulate to an amended complaint to add a constructive discharge cause of action.  Ms. Kapetan responded with her December 16, 2003 letter that the May 2003 complaint "is still in the administrative process" and that until completion of the process, Ms. Marriner "has not exhausted her administrative remedies and an amendment is therefore premature."  Ms. Kapetan noted in her December 31, 2003 letter to Mr. Smith that "I am not adverse to including all claims in one lawsuit."

Col. Weir's February 19, 2004 letter informed Mr. Smith that the Army had employed an EEO counselor "to counsel Ms. Marriner regarding the [May 2003] complaint."  The EEO counselor's March

15

10, 2004 report notes that Ms. Marriner contacted him on March 9, 2004 but that the EEO counselor could not interview Ms. Marriner without Mr. Smith's consent.  Ms. Marriner further claims that the EEO counselor engaged in less than meaningful attempts to address her May 2003 complaint.

_____As Ms. Marriner declares that after receiving the EEO counselor's March 17, 2004 notice of final interview, she served the Army by certified mail an administrative complaint.

With his June 10, 2004 letter, Mr. Smith informed the Army that he had received no response to the March 2004 complaint.  Col. Weir responded in his July 14, 2004 letter that the March 2004 complaint "has been dismissed for lack of cooperation" in that neither Ms. Marriner nor Mr. Smith provided "factual details to support her allegations."  Ms. Marriner notes that with its November 9, 2004 letter, the Army for the first time acknowledged official receipt of the March 2004 complaint to assign it a case number.

Ms. Marriner points out that the Army's November 18, 2004 memorandum dismissed Ms. Marriner's May 2003 complaint on grounds that Ms. Marriner failed to file a formal complaint within 15 calendar days of the EEO counselor's March 17, 2004 notice of final interview.  On December 16, 2004, Ms. Marriner filed an appeal with the EEOC, which with its July 12, 2006 decision found that the March 2004 complaint was timely filed and improperly dismissed.  The EEOC noted that the May 2003 complaint "is not at issue in this decision" and permitted Ms. Marriner to file a civil action within 90 days.

On July 14, 2005 and based on stipulation with the U.S. Attorney's Office, Ms. Marriner filed her first amended complaint in this action to include what she and Mr. Smith reasonably construed as her global claims.

Ms. Marriner has raised factual issues that the Army ignored her administrative complaints and delayed and failed to engage in meaningful EEO counseling to contribute to a hostile environment and difficulty to proceed with her claims.  The Army apparently confused Ms. Marriner's May 2003 and March 2004 complaints to contribute to delay.  Mr. Smith attempted to address amendment issues with the U.S. Attorney's office which did not oppose an amended complaint  "including all claims in one lawsuit."  Although the Army's motion to dismiss is not governed by F.R.Civ.P. 56 summary judgment standards, factual issues, as further discussed, militate against granting the Army's requested dismissal.

1          ***Waiver Of Exhaustion Requirements***

2          Ms. Marriner argues that she sufficiently presented her claims to the Army to avoid an exhaustion

3    jurisdictional bar in that the Army's motion to dismiss "is late."  Ms. Marriner appears to argue that the

4    Army waived an exhaustion jurisdictional bar.

5          In *Macy v. Dalton*, 853 F.Supp. 350, 356-357 (E.D. Cal. 1994), U.S. District Judge William

6    Shubb explained:

7               The exhaustion requirement consists of two elements: "'the jurisdictional' non-waivable
              requirement of presentment of the claim . . . (presentment); and (2) the 'waivable'
8               requirement of exhaustion of administrative remedies (exhaustion)." . . .

9                    If the plaintiff fails to present a claim to the appropriate administrative agency,
              the defendant agency may not waive or be estopped from asserting the exhaustion
10              requirement. . . . But, if the plaintiff presents but then abandons a claim made to an
              agency, the court will consider whether the agency waived or may be deemed in equity
11              to have waived the exhaustion requirement.

12                   In the context of Title VII, the jurisdictional presentment requirement is met
              when the employee/plaintiff presents her claims to the employer/agency or an appropriate
13              administrative review body such as the . . . EEOC, even if the claims are not timely
              presented. . . . However, the presentment requirement is not met and the court lacks
14              jurisdiction when the plaintiff's claims have never been presented for agency or
              administrative review.

15

16         Here, Ms. Marriner satisfied the presentment requirement with no less than her May 2003 and

17   March 2004 complaints. (Ms. Marriner further declares that in April 2002, she "filed a formal complaint

18   with the Army" to which there was no response.)  As discussed above, the post-supply department

19   transfer matters raised by Ms. Marriner are like or reasonably related to retaliation and harassment

20   referenced in her May 2003 and March 2004 complaints.  Ms. Marriner has latched the jurisdictional

21   hook as to such matters.  Putting aside the scope of Ms. Marriner's claims in the May 2003 and March

22   2004 complaints, the question turns to whether the Army waived exhaustion requirements for claims it

23   seeks to dismiss.  The problem for the Army is that its communications with Mr. Smith left Mr. Smith

24   and Ms. Marriner with a reasonable impression that all of Ms. Marriner's claims would be addressed

25   in this action based on her first amended complaint.  In December 31, 2003, Ms. Kapetan communicated

26   that she was "not adverse to including all claims in one lawsuit."  The Army delayed until February 2004

27   to arrange EEO counseling as to Ms. Marriner's May 2003 complaint.  In July 2004, Col. Weir

28   apparently misinformed Mr. Smith that the Army had dismissed Ms. Marriner's March 2004 complaint.

17

1  The Army did not assign the March 2004 complaint a case number until November 2004. In February
2  2005, the U.S. Attorney's office stipulated to the filing of Ms. Marriner's first amended complaint which
3  alleges matters which the Army seeks to dismiss. In July 2006, the EEOC found that the March 2004
4  complaint was timely filed and improperly dismissed and permitted Ms. Marriner to proceed with a civil
5  action as to her March 2004 complaint. This action has been pending at the time of these events. The
6  import is that the Army no less than waived exhaustion requirements to permit the parties to address Ms.
7  Marriner's global claims in this action.[2]

8  *** Disability Retirement Claim ***

9       For the first time in its reply papers, the Army argues that Ms. Marriner's disability retirement
10  claim is not properly before this Court because OPM, not the Army, determines disability retirement
11  claims and Ms. Marriner has not sought this Court's review of MSPB's award of benefits to her. As a
12  reminder, on July 14, 2005, the MSPB reversed OPM's denial of disability retirement benefits. In its
13  opening papers, the Army argued that Ms. Marriner had not administratively exhausted the denial of
14  benefits and that the MSPB had "resolved" the retirement benefits issue. The Army did not argue, as
15  it does in its reply papers, that OPM determines disability retirement claims and that Ms. Marriner failed
16  to seek this Court's review of the MSPB's decision favorable to her.

17       A moving party's attempt to introduce new facts or different legal arguments in reply papers is
18  improper. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-895, 110 S.Ct. 3177, 3192
19  (1990) (court has discretion to disregard late-filed factual matters); *but see also Glenn K. Jackson v. Roe*,
20  273 F.3d 1192, 1201-1202 (9th Cir. 2001) (district court's discretion to consider issue raised for first
21  time in reply brief). The OPM resolution and MSPB review issues are new to the Army's reply papers.
22  Moreover, the Army fails to justify why Ms. Marriner would seek review of the MSPB's decision to
23  award her benefits. Ms. Marriner appears to claim that the Army thwarted processing of her disability
24  retirement benefits as retaliation and to contribute to initial OPM denial of disability retirement benefits.
25  / / /

26
27
28
---
[2]     This point is further supported by the parties' attempts at "global settlement" and informing the Court of such attempts. Moreover, this Court is troubled by the lateness of the Army's motion. Although several Assistant U.S. Attorneys have defended this action, the Army's explanation for the motion's lateness does not offset Ms. Marriner and Mr. Smith's reasonable impression that this action would address Ms. Marriner's global claims.

1 **The Army's Alternative Motion In Limine**

2 *Relevance And Undue Prejudice*

3    As an alternative to its motion to dismiss, the Army seeks to exclude evidence of Ms. Marriner's

4 post-supply department transfer matters under F.R.Evid. 401 (relevance) and 403 (undue prejudice).  The

5 Army contends that "since the Court has no jurisdiction over plaintiff's working conditions in Stockton

6 supply, evidence relating to these conditions [is] wholly irrelevant."  Ms. Marriner responds that even

7 if she failed to administratively exhaust post-supply department transfer matters, they may be introduced

8 as background evidence and evidence of the Army's knowledge of a hostile environment to support her

9 discrimination and retaliation claims.

10    F.R.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the

11 existence of any fact that is of consequence to the determination of the action more probable or less

12 probable than it would be without the evidence."  F.R.Evid.  402 provides that all relevant evidence is

13 admissible, except as otherwise provided by the U.S. Constitution, Act of Congress or applicable rule

14 of Federal Rules of Evidence and that irrelevant evidence "is not admissible."  Evidence is irrelevant

15 when it lacks tendency to prove a consequential fact.  *Waters v. Genesis Health Ventures, Inc.*, 400

16 F.Supp.2d 814, 817 (E.D. Pa. 2005).

17    As noted above, the post-supply department transfer matters raised by Ms. Marriner are like or

18 reasonably related to retaliation and harassment referenced in her May 2003 and March 2004 complaints

19 and first amended complaint in this action.  As such, the matters are relevant to her claims in this action.

20    The Army argues that "[e]vidence of plaintiff's Stockton employment unrelated to those

21 unresolved matters stated in her May 28, 2003 administrative claim should also be excluded under

22 Federal Rule of Evidence 403."  Ms. Marriner responds that exclusion of post-supply department

23 transfer matters will prejudice her to "prevent her from showing the circumstances of her environment."

24    F.R.Evid. 403 provides relevant evidence "may be excluded if its probative value is substantially

25 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

26 considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

27 F.R.Evid. 403's "major function is limited to excluding matter of scant or cumulative probative force,

28 dragged in by the heels for the sake of its prejudicial effect.  As such, Rule 403 is meant to relax the iron

1   rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion

2   despite its relevance." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862,

3   100 S.Ct. 128 (1979).

4           "Of course, all relevant evidence is prejudicial; Rule 403 is concerned only with limiting 'unfair'

5   prejudice." *United States v. Simpson*, 910 F.2d 154, 158 (4th Cir. 1990).  Unfair prejudice "means an

6   undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an

7   emotional one." F.R.Evid. 403, Adv. Comm. Notes; *Old Chief v. United States*, 519 U.S. 172, 180, 117

8   S.Ct. 644, 650 (1997).  Unfair prejudice is characterized as "the possibility that the evidence will excite

9   the jury to make a decision on the basis of a factor unrelated to the issues properly before it." *Mullen*

10  *v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1134 (4th Cir. 1988).

11          In its F.R.Evid. 403 analysis, a trial court should consider the "need" of the evidence. *See United*

12  *States v. Meester*, 762 F.2d 867, 875 (11th Cir. 1985); *United States v. Spletzer*, 535 F.2d 950, 956 (5th

13  Cir. 1976).  To determine the probative value of evidence under F.R.Evid. 403, a court considers "not

14  only the extent to which it tends to demonstrate the proposition which has been admitted to prove, but

15  also the extent to which the proposition was directly at issue in the case." *United States v. Herman*, 589

16  F.2d 1191, 1198 (3rd Cir. 1978), *cert. denied*, 441 U.S. 913, 99 S.Ct. 2014 (1979).  Evidence may be

17  excluded "when its admission would lead to litigation of collateral issues, thereby creating a side issue

18  which might distract the jury from the main issues." *Blancha v. Raymark Industries*, 972 F.2d 507, 516

19  (3rd Cir. 1992).

20          Again, the Army fails to define clearly what it seeks to exclude.  The Army points to Ms. Roman-

21  Lomeli's "hyperbolic phrases such as 'I had to convince her to make it through a whole work day',

22  '[plaintiff] gave everything she had to force herself to make it through an eight hour day' and 'the stress

23  became so phenomenal it started to affect her mentally and physically.'"  The Army contends that such

24  comments are "highly prejudicial."  The Army appears to seek to exclude evidence that Ms. Marriner

25  was assigned no duties in the Stockton supply department and suffered resulting mental and physical

26  stress.  Since the post-supply department transfer matters raised by Ms. Marriner are like or reasonably

27  related to retaliation and harassment referenced in her May 2003 and March 2004 complaints and her

28  first amended complaint in this action, the Army fails to substantiate preclusion of Ms. Marriner's post-

1    supply department transfer matters under F.R.Evid 403.  In other words, the Army fails to demonstrate

2    danger of unfair prejudice, confusion of issues, etc.

3                                    **CONCLUSION AND ORDER**

4            For the reasons discussed below, this Court DENIES the Army's motion to dismiss and

5    alternative in limine motion.

6            IT IS SO ORDERED.

7    **Dated:    August 17, 2006                           /s/ Lawrence J. O'Neill**
     66h44d                                        UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28